**JONATHAN NOAH SCHWARTZ, ESQ.**
Florida Bar No. 1014596
JONATHAN SCHWARTZ LAW PLLC
10200 SW 25 Street, Suite 111
Doral, Florida 33172
Tel.: (973) 936-2176
E-mail: jschwartz@jonschwartzlaw.com

**KEITH CHASIN, ESQ.**
Florida Bar No. 350087
KEITH CHASIN P.A.
2828 Coral Way, Suite 540
Miami, Florida 33145
Tel.: (305) 670-1833
E-mail: kchasin@chasinlaw.com

*Attorneys for the Plaintiff*, Arron Adams

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ARRON ADAMS,          ) <br>          ) <br>    Plaintiff,     ) <br>          ) <br> v.          ) <br>          ) <br> UNITED STATES OF AMERICA,  ) <br>          ) <br>    Defendant.    ) <br> _____) | Civil Action No.: _____ |

## COMPLAINT

COMES NOW the Plaintiff, Arron Adams ("Mr. Adams" or the "Plaintiff"), by and through his undersigned counsel, and sues the Defendant, the United States of America, as and for the Federal Bureau of Prisons (the "Defendant" or the "Bureau of Prisons"), and alleges as follows:

### Introduction and Summary

1.      "No tyranny can have a severer effect than that which is exercised under the appearance of laws, and with the plausible colours of justice[.]" Baron de Montesquieu, *Considerations on the Causes of the Grandeur and Declension of the Roman Empire*, Ch. XIV (1721).

2.      Arron Adams is an inmate, recently released on ankle monitor on "Good Conduct Time Release," who was incarcerated at, *inter alia*, Federal Correctional Institution Pollock ("FCI Pollock"), an institution operated by the Federal Bureau of Prisons in Pollock, Louisiana.

3.      Mr. Adams maintains his innocence, and to that end believes he was wrongfully convicted in 2010, although the propriety of his conviction is not the substance of this lawsuit.[1] Mr. Adams now suffers from physical ailments and mental illnesses such as post-traumatic stress disorder ("PTSD"), anxiety and depression, all of which were not present prior to, and caused by, his incarceration, and even now, having been released, continues to await surgery to remedy ailments and receive ongoing treatment for these conditions, all of which ailments and conditions resulted from the negligence of the Prisons.

4.      Sadly, violations like these are commonplace at FCI Pollock and other Federal Correctional Institutions. The Federal Bureau of Prisons' tyrannical framework, in which it plays judge, jury and executioner, regularly subjects our most disenfranchised neighbors to whom it pays minimal attention, including Mr. Adams who brings these issues to bear by this suit to recover for injuries suffered intra-incarceration within the Prisons, to the type of unlawful conduct complained of herein.

## Jurisdiction and Venue

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States of America and is premised on the acts and omissions of the Defendant acting under color of federal law.

6.      This Court further has jurisdiction over this action pursuant to 28 U.S.C. § 1346(b), as this is a claim against the United States, for money damages, accruing after January 1, 1945, for personal injuries caused by the negligent and wrongful acts and omissions of employees of the United States Government while acting within the course and scope of their office or employment, under the circumstances where the Defendant, if a private person, would be liable to the Plaintiff.

7.      Jurisdiction founded upon the federal law is proper in that this action is premised upon federal causes of action under the Federal Tort Claims Act (the "FTCA"), 28 U.S.C. § 2671, *et seq.*

---

[1] Mr. Adams does not waive any rights he may have to bring a claim for wrongful conviction.

8.      Pursuant to the FTCA, Plaintiff presented the following Federal Tort Claims to the appropriate federal agency within two (2) years of accrual: TRT-SCR-2020-05656, TRT-SCR-2020-06284, TRT-SCR-2020-06249, TRT SCR-2020-00620 and TRT-SCR-2021-00621. Further, this action was filed within six months of the running of the six month period after the Plaintiff presented his amended claim to the appropriate agency. *See* Exhibit 1 (providing Apr. 5, 2021 amendment of claims).

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1402(b), as this is a civil action on a tort claim against the United States under 28 U.S.C. § 1346(b) and Mr. Adams resides in this District.

<b><u>Parties</u></b>

10.     Mr. Adams is an adult resident of Broward County, Florida, who was recently incarcerated at FCI Pollock and is currently sentenced to electronic monitoring under Register Number 91471-004.

11.     The Federal Bureau of Prisons is a federal law enforcement agency subdivision of the United States Department of Justice and is responsible for the administration of federal prisons, including FCI Pollock.

<b><u>Facts</u></b>

**A.      The Plaintiff's Indictment, Arrest, Plea of Not Guilty, Sentence of Imprisonment and <u>Appeal.</u>**

12.     On December 8, 2010, a federal jury sitting in the Southern District of Florida returned an indictment charging the Plaintiff with three (3) counts of bank robbery in violation of 18 U.S.C. § 2113(a), and one (1) county of conspiracy to commit bank robbery in violation of 18 U.S.C. § 371. *See* Indictment, *United States of America v. Arron Adams* 0:10-cr-60165-JIC-1 (S.D. Fla. December 8, 2010).

13.     Although Mr. Adams was sentenced to 180 months of imprisonment, Mr. Adams pled not guilty and maintains his innocence to this day. As aforementioned, he was released early and ultimately served 133 months.

14.     On August 15, 2012, the United States Court of Appeals for the Eleventh Circuit affirmed Mr. Adams' judgment and sentence.

**B.      <u>Mr. Adams' Incarceration at Several Federal Correctional Institutions.</u>**

3

15.     Subsequent to his conviction, Mr. Adams was transferred from the Broward County Jail to Miami FDC. Then, he was confined at Beaumont, Texas, after which he was confined at Federal Correctional Institution Coleman in Coleman, Florida and FCI Pollock before ultimately being transferred to Federal Correctional Institution Jessup in Jessup, Georgia, from which he was released early as aforementioned.

16.     BoP's placement of Mr. Adams at FCI Pollock – which is over one thousand (1,000) miles from Broward County, Florida – is contrary to its policy, which dictates that an inmate shall generally be placed at a facility within 500 miles of their home.

**C.      Mr. Adams Has Sustained Physical and Psychological Damages Caused by FCI Pollock's Negligence and Constitutional Deprivations.**

    *i.       FCI Pollock Failed to Maintain its Plumbing Such That Sewage Waste Flooded Mr. Adams' Cell, and Staff Instructed Mr. Adams to Clean the Sewage Waste Without Providing Sanitary Protective Equipment.*

17.     From approximately 2018 through 2020, FCI Pollock failed to adequately maintain its plumbing such that sewage waste would flood the cells of Mr. Adams and other inmates.

18.     The staff of FCI Pollock gave Mr. Adams and other inmates a choice: clean up the waste themselves or remain confined in the sewage infested cells.

19.     FCI Pollock did not provide Mr. Adams and at least some of these other inmates with sanitary protective equipment such as gloves and masks.

20.     Thus, Mr. Adams and at least some of these other inmates cleaned their sewage infested cells barehanded.

21.     Mr. Adams suffered from infections in his fingers caused, and exacerbated, by the barehanded cleaning of feces, urine, and other contaminants that flooded into his cell.

22.     Although medical staff of FCI Pollock told Mr. Adams that his infections required specific medication, Mr. Adams did not receive adequate treatment because the medication he needed was too expensive.

23.     Mr. Adams experiences constant pain, swelling and deformation in his hands and fingers. Mr. Adams has lost mobility and practical utility of his fingers (such as bending and gripping) due to his sustained infections.

24.     Mr. Adams, on June 24, 2020, lodged Federal Tort Claim TRT-SCR-2020-05656 relative to this incident. *See* Exhibit 2.

ii.     *FCI Pollock's Failure to Appropriately Treat Mr. Adams' Cellmate for Mental Illness.*

25.     On or about June 1, 2020, another inmate (the "Cellmate") was assigned for placement in Mr. Adams' cell, Cell 125 in Unit E-1.

26.     The Cellmate displayed frequent mental health episodes, in which the cellmate exhibited violent, aggressive, emotional and suicidal behavior.

27.     On several occasions, the Cellmate and Mr. Adams pleaded with staff members of FCI Pollock to obtain mental health treatment and medication in an effort to assist the Cellmate and prevent continued episodes of the Cellmate's aforementioned behavior.

28.     Accordingly, on June 30, 2020, a hearing took place in which the Cellmate's mental illness was addressed. Upon information and belief, the hearing judge acknowledged that the Bureau of Prisons had knowledge of the Cellmate's severe mental illness based on the Cellmate's previous psychiatric diagnoses. Upon information and belief, present at the hearing were the Cellmate's counselor, psychological department staff, and the Warden and other staff members of FCI Pollock.

29.     Upon information and belief, the Cellmate previously attempted to commit suicide on several occasions, at other institutions and USP Pollock, before the Cellmate's transfer to FCI Pollock.

30.     Upon information and belief, the Cellmate's file was supposed to include a staff alert, or some notation to indicate, that the Cellmate was not allowed to obtain a razor due to his previous suicide attempts.

31.     Upon information and belief, the staff of FCI Pollock failed to treat, monitor, or develop a comprehensive treatment plan for the Cellmate.

32.     The following staff of FCI Pollock were aware of the Cellmate's history of mental illness, specifically the Cellmate's frequently exhibition of aggressive and suicidal behavior:

a.  Unit Officer D. Altzberg encountered several altercations with the Cellmate, and Mr. Adams expressed his concern to Officer Altzberg;

b.  Unit Manager D. Lair wrote an incident report detailing Mr. Adam's refusal to share a cell with the Cellmate due to the Cellmate's history of mental illness, and threatened to write an additional incident report about Mr. Adams unless Mr. Adams accepted the Cellmate's transfer to Mr. Adams' cell;

5

c. Unit Counselor J. Lipscomb was aware of the Cellmates mental illness as Lipscomb attended the hearing on June 30, 2020, the subject of which concerned details of the Cellmates mental illness;

d. Case Manager N. Harvey encountered an altercation with the Cellmate, and was present when the Cellmate's psychologist filed an incident report following the altercation. The Cellmate had previously attempted to commit suicide during Harvey's shift in the special housing unit, and disclosed to Mr. Adams that Harvey knew of the Cellmate and the Cellmate's mental illness;

e. Warden C. McConnel was aware of the Cellmate's mental illness due to interactions between McConnel and the Cellmate, yet signed off on the Cellmate's transfer into Mr. Adams' cell;

f. Chief Psychologist Humi was aware of the Cellmate's mental illness yet did not produce a comprehensive treatment plan. Upon information and belief, while the Cellmate was on active suicide watch, Humi directed profanity and intolerant tone of voice at the Cellmate in front of witness Adrian Smith;

g. Psychologist Stephens met, spoke and interacted with the Cellmate several times regarding evaluations of the Cellmate;

h. Dr. Fox evaluated the Cellmate;

i. Unit Manager Tolbert was the Cellmate's Case Manager at USP Pollock and was aware of the Cellmates mental illness;

j. Assistant Health Services Administrator E. Early was assigned to the Cellmate and thereby was aware of the Cellmate's mental illness;

k. A.W. Taggert was aware of the Cellmate's mental illness and, upon information and belief, told the Cellmate that Taggert "did not care" about the Cellmate's mental illness.

33. On July 3, 2020, the Cellmate attempted to commit suicide while Mr. Adams was sleeping.

34. Mr. Adams woke up in the middle of the night and observed the Cellmate using a razor blade to harm himself.

35. Mr. Adams pressed the emergency alert button in the cell and beat on the door to notify the guards.

36.    The response time of the guards and medical staff was unreasonably long, and Mr. Adams was forced to watch the Cellmate bleed profusely and struggle for his life.

37.    Mr. Adams removed the razor blade from the Cellmate's possession and attempted to apply pressure to the Cellmate's self-inflicted wounds.

38.    Upon information and belief, Mr. Adams' actions during the time that elapsed between the suicide attempt and the response of guards and medical staff saved the Cellmate's life.

39.    Upon information and belief, Mr. Adams sustained significant physical injury in the process of restraining the Cellmate, including new and independent injury to his shoulders, knees and back. Additionally, Mr. Adams aggravated a pre-existing shoulder injury.[2]

40.    A psychiatrist diagnosed Mr. Adams with PTSD, anxiety and depression resulting from the aforementioned incident. The psychiatrist prescribed Mr. Adams Cymbalta, Prazosin, Amitriptyline and Risperidone to treat his psychological harm sustained during the above-mentioned incident.

41.    To this day, the adverse impact of Mr. Adams physical and psychological injuries limit his mobility, as well as his ability to adequately sleep and work.

42.    Mr. Adams, on July 6, 2020, lodged Federal Tort Claim TRT-SCR-2020-06284 relative to this incident. *See* Exhibit 3. On July 23, 2020, Mr. Adams further lodged Federal Tort Claim TRT-SCR-2020-06249 relative to this incident. *See* Exhibit 4. On July 27, 2020, Mr. Adams also lodged Federal Tort Claim TRT-SCR-2021-00620 relative to this incident. *See* Exhibit 5. On August 5, 2020, Mr. Adams then lodged Federal Tort Claim TRT-SCR-2021-00621 relative to this incident. *See* Exhibit 6.

**D.    The Bureau of Prisons Has Not Responded to Mr. Adams' Filing of Amended Administrative Tort Claims.**

43.    To reiterate, Mr. Adams filed five (5) Administrative Tort Claims during his incarceration:   TRT-SCR-2020-05656, TRT-SCR-2020-06284, TRT-SCR-2020-06249, TRT-SCR-2021-00620, and TRT-SCR-2021-00621 (the "Administrative Tort Claims"). *See* Exhibits 2-6.

---

[2] A Bureau of Prisons contracted specialist requested that Mr. Adams have orthopedic surgery for his pre-existing shoulder injury on March 20, 2020 prior to the Cellmate's suicide attempt.

44.    On April 5, 2021, Mr. Adams sent a letter to Mr. Jason Sickler via Certified Mail, # 7020 1290 0000 6839 3862, amending the Administrative Tort Claims (the "Amendment"). *See* 1.

45.    The Legal Department of the Bureau of Prisons received the Amendment on April 5, 2021, as indicated by a stamp on the Amendment that reads "RECEIVED APR 05 2021 BUREAU OF PRISONS LEGAL DEPARTMENT, SCRO." *Id.* at 1.

46.    To this day, Adams nor his counsel have received a response to the Amendment from the Bureau of Prisons.

47.    Thus, because six (6) months has elapsed since the Bureau of Prisons received the Amendment, Mr. Adams has satisfied all conditions precedent to filing this action, including exhausting all existing administrative remedies. *See* 28 U.S.C. § 2675(a).

## Legal Framework

48.    Punishments of unnecessary cruelty are forbidden by the Eighth Amendment to the Constitution. *See Wilkerson v. Utah*, 99 U.S. 130, 136 (1878) (citing Cooley, Const. Lim. (4th ed.) 408; Wharton, Cr. L. (7th ed.), § 3405).

49.    In *United States. v. Muniz,* the Supreme Court held that actions "to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee" are within the purview of the Federal Tort Claims Act. 374 U.S. 150 (1963).

## FIRST CLAIM FOR RELIEF
### Deliberately Degrading Punishment in Violation of Eighth Amendment Rights

50.    Paragraphs one (1) through forty-nine (49) *supra* are hereby realleged and incorporated by reference to this Claim for Relief.

51.    This First Claim for Relief concerns Mr. Adams' claims detailed in TRT-SCR-2020-05656. *See* Exhibits 1-2.

52.    Mr. Adams has constitutionally protected rights under the Eighth Amendment to the United States Constitution.

53.    The Federal Bureau of Prisons, acting under color of federal authority, violated the Plaintiff's Eighth Amendment rights when Mr. Adams was instructed to remove sewage waste from, and clean, his cell with his bare hands.

54. Mr. Adams' available statutory cause of action alone does not provide meaningful remedy.

55. An appropriate remedy, namely damages, can be imposed.

56. The Federal Bureau of Prisons is liable to the Plaintiff for their violations of Mr. Adams' Eight Amendment rights.

## REQUESTED RELIEF

WHEREFORE Mr. Adams respectfully requests that this Honorable Court:

A. rule that the Eighth Amendment protects the rights of incarcerated individuals from being subjected to deliberately degrading punishment, specifically from being instructed to clean sewage waste with bare hands and without sanitary protective equipment for no legitimate law enforcement purpose;

B. enter judgment awarding Mr. Adams compensatory damages against the Bureau of Prisons in an amount appropriate to the evidence adduced at trial;

C. enter judgment awarding Mr. Adams punitive or exemplary damages against the Bureau of Prisons in an amount appropriate to the evidence adduced at trial;

D. enter judgment awarding Mr. Adams his costs and reasonable attorneys' fees in this action; and

E. grant Mr. Adams such other and further relief as the Court may deem just and proper.

## SECOND CLAIM FOR RELIEF
### Negligence

57. Paragraphs one (1) through forty-nine (49) are hereby realleged and incorporated by reference to this Claim for Relief.

58. This Second Claim for Relief concerns Mr. Adams claims detailed in TRT-SCR-2020-05656. *See* Exhibits 1-2.

59. Mr. Adams sustained infectious injury when he followed instructions to clean his sewage infested cell with his bare hands and without sanitary protective equipment.

60. At all times material hereto, agents of the Bureau of Prisons were acting within the scope of their official duties.

61. At all times material hereto, the Bureau of Prisons acted negligently and wrongfully.

62. At all times material hereto, the Bureau of Prisons had a duty of care to provide Mr. Adams with suitable quarters, safekeeping, care and subsistence.

63. At all times material hereto, the Federal Bureau of Prisons breached its duty of care to Mr. Adams in failing to properly maintain its plumbing, causing sewage backup to flood into Mr. Adams cell.

64. The Bureau of Prisons' negligent breach described *supra* proximately caused the injury and damage that Mr. Adams complains of herein.

## REQUESTED RELIEF

WHEREFORE Mr. Adams respectfully requests that this Honorable Court:

A. enter judgment awarding Mr. Adams compensatory damages against the Federal Bureau of Prisons in an amount appropriate to the evidence adduced at trial;

B. enter judgment awarding Mr. Adams punitive or exemplary damages against the Federal Bureau of Prisons in an amount appropriate to the evidence adduced at trial;

C. enter judgment awarding Mr. Adams his costs and reasonable attorneys' fees in this action; and

D. grant Mr. Adams such other and further relief as the Court may deem just and proper.

## THIRD CLAIM FOR RELIEF
### Negligence

65. Paragraphs one (1) through forty-nine (49) are hereby realleged and incorporated by reference to this Claim for Relief.

66. This Third Claim for Relief concerns Mr. Adams claims detailed in TRT-SCR-2020-06284, TRT-SCR-2020-06249, TRT-SCR-2021-00620 and TRT-SCR-2021-00621. *See* Exhibits 1, 3-6.

67. Mr. Adams sustained physical and psychological injury during the prolonged response time of guards and medical staff when his Cellmate attempted to commit suicide.

68. The Bureau of Prisons knew, or reasonably should have known, that the Cellmate was suicidal and otherwise not mentally fit for transfer to Mr. Adams' cell.

69. Despite its awareness of the Cellmate;s history of suicide attempts and exhibition of other mental illness, the Bureau of Prisons failed to treat, monitor, or develop a comprehensive treatment plan for the Cellmate.

70. In transferring the Cellmate and failing to timely respond to the Mr. Adams' cell during the Cellmate's attempted suicide, agents of the Bureau of Prisons were all acting within the scope of their official duties.

71. In the above-mentioned incident, the Bureau of Prisons acted negligently and wrongfully.

72. At all times material hereto, the Bureau of Prisons had duties of care to (1) refrain from transferring the Cellmate into Mr. Adams' cell, (2) promptly respond to the Cellmate's suicide attempt, and (3) promptly treat Mr. Adams' physical and psychological injuries.

73. The Bureau of Prisons breached its above-mentioned duties of care.

74. The negligent breach described *supra* proximately caused the physical and psychological injuries and damages that Mr. Adams complains of herein.

## REQUESTED RELIEF

WHEREFORE Mr. Adams respectfully requests that this Honorable Court:

A. enter judgment awarding Mr. Adams compensatory damages against the Federal Bureau of Prisons in an amount appropriate to the evidence adduced at trial;

B. enter judgment awarding Mr. Adams punitive or exemplary damages against Federal Bureau of Prisons in an amount appropriate to the evidence adduced at trial;

C. enter judgment awarding Mr. Adams his costs and reasonable attorneys' fees in this action; and

D. grant Mr. Adams such other and further relief as the Court may deem just and proper.

## **Jury Demand**

Mr. Adams hereby demands a trial by jury of all claims so triable.

[ATTORNEY SIGNATURES ON FOLLOWING PAGE]

Respectfully submitted,

**/s/ Jonathan Noah Schwartz**
Jonathan Noah Schwartz, Esq.
Florida Bar No. 1014596
JONATHAN SCHWARTZ LAW PLLC
10200 SW 25th Street, Ste. 111
Doral, Florida 33172
Tel.: (973) 936-2176
E-mail: jschwartz@jonschwartzlaw.com

KEITH CHASIN, ESQ.
Florida Bar No. 350087
KEITH CHASIN P.A.
2828 Coral Way, Suite 540
Miami, Florida 33145
Tel.: (305) 670-1833
E-mail: kchasin@chasinlaw.com

*Attorneys for the Plaintiff*,
 Mr. Arron Adams

Dated: September 10, 2021.